Mr. Larry Norris, Director Arkansas Department of Correction P.O. Box 8707 Pine Bluff, AR 71611-8707
Dear Mr. Norris:
You have presented the following questions for my opinion:
 (1) A.C.A. § 16-93-611 provides that persons convicted of certain crimes are required to serve 70% of their sentence. The law as currently applied expires on April 30, 2002. A revised version of A.C.A. § 16-93-611 goes into effect on April 30, 2002. The revision eliminates two offenses (both involving methamphetamine). While the revision obviously eliminates the 70% requirement for those persons who commit methamphetamine offenses after April 30, 2002, does the revision eliminate the 70% requirement for those inmates currently incarcerated and/or whose offense was (is) committed prior to April 30, 2002?
 (2) Act 218 of 2002 added the crimes of residential and commercial burglary to A.C.A. § 12-12-1109 to require the taking of DNA samples for these offenses. The list of offenses that require DNA samples is in A.C.A. § 12-12-1103, which Act 218 did not amend. A.C.A. § 12-12-1103
not only lists the crimes, but provides that any attempt, solicitation, conspiracy to commit one of the enumerated offenses also requires a DNA sample. Does an attempt, solicitation or conspiracy to commit a residential or commercial burglary require a DNA sample?
RESPONSE
Question 1 — A.C.A. § 16-93-611 provides that persons convicted ofcertain crimes are required to serve 70% of their sentence. The law ascurrently applied expires on April 30, 2002. A revised version of A.C.A.§ 16-93-611 goes into effect on April 30, 2002. The revision eliminatestwo offenses (both involving methamphetamine). While the revisionobviously eliminates the 70% requirement for those persons who commitmethamphetamine offenses after April 30, 2002, does the revisioneliminate the 70% requirement for those inmates currently incarceratedand/or whose offense was (is) committed prior to April 30, 2002?
As explained more fully below, it is my opinion that the date of April 30, 2002 will not trigger any change in the applicability of the 70% requirement to inmates who are currently incarcerated for the two methamphetamine offenses, and whose offenses were committed after the effective date of Act 1268 of 1999).
Your question arises out of some discrepancies in the codification of A.C.A. § 16-93-611. That statute, with its 70% requirement, was originally passed in 1995, by Act 1326, § 1. That original version did not include the methamphetamine offenses. The statute was amended in 1997 (by Acts 945 and 1197), but still did not include the methamphetamine offenses.[1] The statute was amended again in 1999, by two acts: Act 1268 and Act 1337. Act 1268 added the methamphetamine offenses, and included a sunset clause, providing that the Act was to remain in effect until April 30, 2002. Act 1268 included an emergency clause and went into effect on April 9, 1999. The other Act that amended A.C.A. § 16-93-611 in 1999, Act 1337, did not include the methamphetamine offenses and did not include a sunset clause or any reference to April 30, 2002. Act 1337 included an emergency clause and went into effect on April 12, 1999. In 2001, the General Assembly passed Act 1782, which repealed the sunset clause of Act 1268.
This legislative history gives rise to the question of whether Act 1337, which did not include the methamphetamine offenses or a sunset clause, overrode Act 1268, which did include those offenses (since Act 1337 went into effect later in time than Act 1268). It is my opinion that Act 1268 did not override Act 1337. One of the primary rules of statutory construction is that if two acts are passed during the same legislative session and address the same subject, they should be read harmoniously so that both can be given effect if possible. Indeed, the presumption is that two acts passed during the same session that address the same subject were actuated by the same policy and that both were intended to be given effect. See Sutherland on Statutory Construction, § 23.17 (5th
Ed., 1993); Adams v. Arthur, 969 S.W.2d 598, 333 Ark. 53 (1998); Horn v.White, 225 Ark. 540, 284 S.W.2d 122 (1955). This rule is codified at A.C.A. § 1-2-207(a). I acknowledge that under another rule of statutory construction, if two conflicting acts are passed during the same legislative session, the one passed later in time will take precedence.Adams, supra. This rule is codified at A.C.A. § 1-2-207(b). However, the Arkansas Supreme Court has held that this latter rule must yield to the former one in order to effectuate legislative intent. Horn, supra.
Moreover, the court has held that if two acts that are passed at the same legislative session contain conflicting clauses, the whole record of legislation will be examined to ascertain the legislative intent, and such intent, if ascertained, will be given effect, regardless of priority of enactment. Id. In my opinion, the omission of a clause in legislation amending the same statute that was amended by a previous act passed during the same session does not constitute a conflict — particularly if the subsequent legislation includes no explicit statement in the title or elsewhere of any intent to exclude the omitted clause. In the present case, Act 1337 included no indication whatsoever of any intent to undo what Act 1268 had just accomplished three days earlier: the inclusion of the methamphetamine offenses in the 70% requirement. In Citizens toEstablish a Reform Party v. Priest, 325 Ark. 257, 926 S.W.2d 432 (1996), the court held that the "last passed" rule should have no application when "nonamendatory re-enactments" are at issue.
When I apply the foregoing rules of statutory construction to Act 1268 and Act 1337 of 1999, I find that Act 1337 was "nonamendatory" to Act 1268, that the two acts do not conflict, that it is possible to harmonize them, and that both acts should be given effect. I must therefore conclude that the two methamphetamine offenses remain subject to the 70% requirement. Moreover, because the sunset clause of Act 1268 was repealed prior to the expiration date (April 30, 2002), that act (including the reference to the methamphetamine offenses) will remain in effect permanently. In short, the "pocket part" the Arkansas Code volume that contains A.C.A. § 16-93-611 is simply mistaken in setting forth two different versions of that statute. It is my understanding that this error is to be corrected shortly. I note that both versions of the statute that are set forth in the pocket part correctly omit any sunset clause.
Accordingly, April 30, 2002 will not trigger any change in the applicability of the 70% requirement to inmates who are currently incarcerated for these methamphetamine offenses, and whose offenses were committed after the effective date of Act 1268 (April 9, 1999).[2]
Question 2 — Act 218 of 2002 added the crimes of residential andcommercial burglary to A.C.A. § 12-12-1109 to require the taking of DNAsamples for these offenses. The list of offenses that require DNA samplesis in A.C.A. § 12-12-1103, which Act 218 did not amend. A.C.A. §12-12-1103 not only lists the crimes, but provides that any attempt,solicitation, conspiracy to commit one of the enumerated offenses alsorequires a DNA sample. Does an attempt, solicitation or conspiracy tocommit a residential or commercial burglary require a DNA sample?
It is my opinion that adjudication of guilt of the offenses of attempt, solicitation, or conspiracy to commit a residential or commercial burglary does not require the taking of a DNA sample.
A.C.A. § 12-12-1109 is the only statute that lists the offenses that require the taking of a DNA sample. As you have indicated, the list in this statute includes sex offenses, violent offenses, residential or commercial burglary, and repeat offenses. A.C.A. § 12-12-1109, as amended by Acts 2001, No. 218, § 1. In listing these offenses, the statute refers to the code sections by which they were made offenses. The code section that creates the offenses of residential and commercial burglary is A.C.A. § 5-39-201.
You have also made reference to the provisions of A.C.A. § 12-12-1103. This statute does not constitute a separate listing of offenses that require the taking of DNA samples. Rather, it is merely a compilation of definitions of certain terms that are used in the subsequent code provisions, including definitions of all of the offenses that were listed in A.C.A. § 12-12-1109 prior to its amendment by Act 218 of 2001. The list of definitions does not include definitions of residential or commercial burglary. Therefore, this compilation of definitions includes definitions of "sex offense," "violent offense," and "repeat offense." Each of these definitions includes the language concerning attempts, solicitations, and conspiracies to commit the acts that constitute these offenses. Again, the compilation of definitions in A.C.A. § 12-12-1103
does not include a definition of "residential or commercial burglary." In the absence of a definition that explicitly encompasses "attempts, solicitations, and conspiracies," I cannot read this element into the definition of such offenses. Rather, I am constrained to employ only the descriptions of residential and commercial burglary that are set forth in A.C.A. § 5-39-201, referenced in A.C.A. § 12-12-1109, which defines those offenses. That statute states:
 (a)(1) A person commits residential burglary if he enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment.
(2) Residential burglary is a Class B felony.
 (b)(1) A person commits commercial burglary if he enters or remains unlawfully in a commercial occupiable structure of another with the purpose of committing therein any offense punishable by imprisonment.
(2) Commercial burglary is a Class C felony.
A.C.A. § 5-39-201.
Because there is no mention in A.C.A. § 12-12-1109 of attempts, solicitations, or conspiracies to commit residential or commercial burglaries, nor are the offenses of residential and commercial burglary defined to include attempts, solicitations, or conspiracies, I cannot interpret the law to require the taking of DNA samples in connection with attempts, solicitations, or conspiracies to commit residential or commercial burglaries.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] It should be noted that Act 1135 of 1997 required persons incarcerated for the offense of manufacturing methamphetamine to serve at least 70% of their sentences. This provision was not codified into A.C.A. § 16-93-611, however.
[2] Parole eligibility is determined by the law in effect at the time the offense was committed. Boles v. Huckabee, 340 Ark. 410, 12 S.W.3d 201
(2000); Woods v. Lockhart, 292 Ark. 37, 727 S.W.2d 849 (1987).